## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ASH GROVE CEMENT COMPANY )
and its Subsidiaries, as a Consolidated Group, )
)
        **Plaintiffs,** )
)
v. ) Case No. 11-2546-CM
)
UNITED STATES OF AMERICA, )
)
        **Defendant.** )
)

## MEMORANDUM AND ORDER

This is a tax refund case. Currently before the court is the government's motion for summary judgment (Doc. 31). In that motion, the parties dispute whether the litigation expenses incurred by Ash Grove Cement Company ("Ash Grove") in resolving a class action lawsuit are deductible as ordinary and necessary business expenses under 26 U.S.C. § 162 or are non-deductible capital expenses under 26 U.S.C. § 263. Because the origin of the claim for which Ash Grove incurred these expenses arose from a capital transaction, the court grants the government's motion.[1]

### I.    BACKGROUND[2]

Ash Grove's primary business activity is the manufacture and sale of cement. Before December 31, 2000, Vinton Corporation ("Vinton") owned 67 percent of the outstanding Ash Grove stock. The remainder of the outstanding Ash Grove stock was owned by certain Sunderland family

---

[1] For simplicity, the court refers to Ash Grove Cement Company and Ash Grove and its subsidiaries as a consolidated group interchangeably as "Ash Grove."

[2] The parties stipulated to the following facts in the Pretrial Order.

-1-

members (approximately six percent), Ash Grove's employee stock ownership plan (less than two percent), and approximately 150 other shareholders unrelated to the Sunderland family.

Before December 31, 2000, Vinton was wholly owned by or for the benefit of multiple generations of the Sunderland family. For many years prior to December 31, 2000, Vinton had a wholly-owned subsidiary, Lyman-Richey Corporation ("Lyman-Richey"), which is a ready-mix concrete company. For various business reasons, the Sunderland family, Vinton, and Ash Grove determined that Ash Grove should acquire Lyman-Richey and Vinton, with the Sunderland family members receiving Ash Grove stock in exchange for their Vinton stock.

Ash Grove had a nine-member Board of Directors ("the Board"). Four directors were members of the Sunderland family. Three directors were full-time employees of Ash Grove. Two directors were not employees of Ash Grove but had been on the Board for fifteen years. As the Sunderland family members and Ash Grove employees constituted a majority of the Board, the Board on May 3, 2000, appointed a committee composed of the two independent Ash Grove directors to negotiate the deal between Ash Grove, Vinton, and Lyman-Richey ("the Special Committee").

Throughout the rest of 2000, the Special Committee negotiated the reorganization terms on behalf of Ash Grove with Vinton and the Sunderland family. The Special Committee approved the reorganization on November 2, 2000, which provided for an exchange ratio of 876 Ash Grove shares for each Vinton share. The transaction at issue in this case consists of multiple steps involving tax-free reorganizations (collectively, "the Transaction"), through which Ash Grove acquired all of Vinton's assets, including all of the issued and outstanding Lyman-Richey stock. After all of the steps were completed, Ash Grove owned Lyman-Richey and the Sunderland family members that owned Vinton stock became the direct owners of the Ash Grove stock owned by Vinton, including the stock received in exchange for Lyman-Richey. The Transaction was completed on December 31, 2000.

On January 18, 2002, Daniel Raider, a minority shareholder in Ash Grove, filed a class action complaint ("the Raider Complaint") in the Delaware Court of Chancery against all nine of Ash Grove's directors ("Directors") and Ash Grove ("the Raider Litigation"). The Raider Complaint alleged that the Transaction improperly diluted the liquidation value of the shares held by the minority stockholders and, therefore, their proportionate voting power. The relief sought by the Raider Complaint was that the Transaction be declared unfair to non-Sunderland family shareholders and rescinded, that shares wrongfully issued to the Sunderland family be cancelled, and that compensation be paid for losses sustained by the class as a result of the Transaction.

In August 2005, the Raider Litigation was settled without Ash Grove or its officers or directors admitting any liability. As part of the settlement, Ash Grove placed $15,000,000 into a trust to be divided up, after legal fees of the Raider plaintiffs were paid, among the class members based on the ratio of shares they owned to the total number of minority-held shares. In addition to the payments made to settle the Raider Litigation, Ash Grove also paid $43,345 during its 2005 tax year for legal fees incurred to defend the Directors. Article V of Ash Grove's bylaws provided indemnification rights for directors and officers of Ash Grove.

In its federal income tax return for 2005, Ash Grove deducted the settlement payment and the payment of legal fees as an ordinary and necessary business expenses under "Legal Settlement Expense." During its examination of the 2005 return, the Internal Revenue Service ("IRS") disallowed the deduction for these payments based upon its determination that the payments should be considered capital expenditures under 26 U.S.C. § 263. Ash Grove paid the tax deficiency and timely filed a Form 1120X, claiming it was entitled to a refund of $7,730,308. That claim was denied in full by the IRS, after which Ash Grove properly filed its complaint in this court within two years after the claims were denied by the IRS.

**II.     ANALYSIS**

The government moved for summary judgment (Doc. 31).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (outlining summary judgment burden).

In this case, the issue before the court is whether the $15,043,345 in litigation expenses incurred by Ash Grove in resolving the Raider Litigation are deductible "ordinary and necessary" business expenses under 26 U.S.C. § 162 or nondeductible capital expenses under 26 U.S.C. § 263. The parties agree that Ash Grove, as the party seeking the deduction, bears the burden of demonstrating entitlement to the deduction.  (Doc. 32 at 8 (citing *Indopco, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992)); Doc. 33 at 6 (agreeing that Ash Grove "bears the burden of proving that it is entitled . . . to the claimed deductions").)

Ash Grove is a taxable corporation and is allowed to deduct "all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . ."  26 U.S.C. § 162(a).  But Ash Grove is not allowed to deduct expenses it incurs with respect to the acquisition or creation of a capital asset or to defend or perfect title to a capital asset.  Instead, such expenses must be capitalized as part of the cost of such property.  26 U.S.C. § 263.

To determine whether an expense is capital or ordinary, federal courts apply the "origin of the claim" test. This test examines the "origin and character" of the claim for which the taxpayer incurred the expense.  *Woodward v. Comm'r*, 397 U.S. 572, 577 (1970).  The object of this test is to determine "whether or not the claim <u>arises in connection with</u> the taxpayer's profit-seeking activities." *United States v. Gilmore*, 372 U.S. 39, 48 (1963) (emphasis in original).  And the test focuses on the

-4-

substance of the claim rather than its form. *Clark Oil & Refining Corp. v. United States*, 473 F.2d 1217, 1220 (7th Cir. 1973).

The Supreme Court explained this test in *Woodward*. In that case, the taxpayers owned or controlled the majority of the common stock in an Iowa publishing corporation. The taxpayers—over the dissent of a minority shareholder—voted to extend the corporation's charter, which triggered a law that required the taxpayers to purchase the minority shareholder's stock. Appraisal litigation ensued to determine the purchase price. The taxpayers attempted to deduct the litigation and appraisal fees as ordinary and necessary business expenses, which the IRS denied.

The Supreme Court agreed with the IRS because the origin of the claim in the appraisal litigation was the determination of the purchase price. Because determination of the price is clearly part of the process of acquisition, the litigation and appraisal fees were properly treated as part of the cost of the stock and were not deductible. In reaching this conclusion, the court rejected the taxpayers' attempt to rely on the "primary purpose" test because "[a] test based on the taxpayer's 'purpose' in undertaking or defending particular piece of litigation would encourage resort to formalisms and artificial distinctions." 397 U.S. at 577.

The Court clarified the "origin of the claim" test in *United States v. Hilton Hotel Corp.*, 397 U.S. 580 (1970), which was a companion case to *Woodward*. In determining that the challenged expenses were not deductible, the Court explained that "the expenses of litigation that arise out of the acquisition of a capital asset are capital expenses" regardless of the "taxpayer's purpose in incurring" them. *Id.* at 583.

In this case, it is undisputed that Ash Grove was a defendant in the Raider Litigation at the time the litigation expenses were incurred. The Raider Lawsuit challenged the fairness of the terms of the Transaction, through which Ash Grove acquired Lyman-Richey and merged with Vinton,

challenged the accuracy of the valuations of the companies, and sought rescission of the Transaction. Settlement of this lawsuit preserved the Transaction. As such, the court concludes that expenses incurred in the Raider Litigation arise out of Ash Grove's acquisition of Lyman-Richey, are capital expenses, and are not deductible.

Ash Grove argues that this analysis fails to distinguish between the plaintiffs' claims in the Raider Litigation that the Directors' breached their fiduciary duties and the Directors' indemnity claims against Ash Grove. Ash Grove contends that the $15,043,345 in litigation expenses are deductible as ordinary and necessary business expenses because the Raider Litigation did not allege any wrongdoing by—or seek monetary damages from—Ash Grove. Therefore, Ash Grove only incurred these expenses as a result of honoring its indemnity obligations to its Directors. Because indemnity expenses are ordinary and necessary business expenses, Ash Grove argues that it should be allowed to deduct these expenses.

The rationale underlying Ash Grove's argument, however, is inconsistent with *Woodward*. Ash Grove focuses on the identity of the defendants in the Raider Litigation and the form of the litigation. Ash Grove is correct that in both *Woodward* and *Hilton* the taxpayer was the party accused of wrongdoing and that such is not the situation in this case. But the origin of the claim test explained in *Woodward* does not hinge on such technical issues. Indeed, the Supreme Court expressly rejected a test that encouraged parties to "resort to formalisms and artificial distinctions" in deciding whether expenses were capital or ordinary. *Woodward*, 397 U.S. at 577. Instead, the test focuses on the substance of the claim giving rise to the expenses. And, in this case, the substance of the claim from which the expenses arose was capital.[3]

---

[3] Ash Grove argues that the government's position encourages companies to disregard their indemnity obligations thereby forcing their directors to file a subsequent breach of contract lawsuit. The court disagrees. In the second lawsuit, the director would have to show that it is entitled to indemnification. This would require the court to at least

To make its argument, Ash Grove primarily relies on the Second Circuit's opinion in *Larchfield Corp. v. United States*, 373 F.2d 159 (2d Cir. 1966). Admittedly, in *Larchfield* the taxpayer was allowed to deduct certain attorney's fees it incurred as a result of its indemnity obligations to a board member. But this case is not controlling on this court, predates *Woodward* by several years, and applies the rejected "primary purpose" test.[4] *Id.* at 167. The other cases relied on by Ash Grove suffer from some or all of the same deficiencies. *See Ingalls Iron Works Co. v. Patterson*, 158 F. Supp. 627 (N.D. Ala. 1958); *B.T. Harris Corp. v. Comm'r*, 30 T.C. 635 (1958).

Ash Grove's approach also raises practical concerns. Specifically, if Ash Grove's approach is accepted, then companies could always deduct litigation expenses as ordinary and necessary business expenses any time a director acting in good faith is sued in connection with a capital transaction so long as the company has an indemnity obligation. It is also possible that Ash Grove's approach could encourage companies to creatively structure settlement agreements in litigation brought against it and its directors so that the bulk of the settlement amount—if not the entire amount—would be deductible. Such results are contrary to the rationale of *Woodward* and would allow companies to manipulate the tax laws.

For all of these reasons, the court concludes that Ash Grove has not met its burden to survive summary judgment. Absent more clear direction from the Supreme Court or the Tenth Circuit, this court is unwilling to narrow the scope of *Woodward* in the manner Ash Grove suggests. Accordingly, the court grants the government's motion for summary judgment (Doc. 31). Also before the court is the government's motion to exclude Ash Grove's expert (Doc. 34) and Ash Grove's motion for oral

---

analyze the capital transaction and determine whether the director acted in good faith. The substance of the subsequent lawsuit would still be the capital transaction.

4   Ash Grove notes that *Larchfield* was decided after *Gilmore*, which was the underlying case for the Supreme Court's decision in *Woodward*. Although true, the court notes that *Larchfield* never cites to or discusses *Gilmore* and, as noted above, applies the "primary purpose" test.

-7-

argument (Doc. 38).  Because the court is granting summary judgment, the court denies both of these motions as moot and without prejudice.

**IT IS THEREFORE ORDERED** that the United States' Motion For Summary Judgment (Doc. 31) is granted.

**IT IS FURTHER ORDERED** that the United States' Motion To Exclude Expert Testimony (Doc. 34) is denied as moot and without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Request For Oral Argument (Doc. 38) is denied as moot and without prejudice.

Dated this 6th day of February, 2013, at Kansas City, Kansas.

                                                     \_\_s/ Carlos Murguia_____
                                                   **CARLOS MURGUIA**
                                                   United States District Judge